# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMINE SODORA, individually and on behalf of other similarly situated persons,<br><br>     Plaintiff,<br><br>     v.<br><br>WAWA, INC.,<br><br>     Defendant | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Demand** |

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss
David A. Straite
Aaron Schwartz
850 Third Avenue
New York, NY 10022
*jstrauss@kaplanfox.com*
*dstraite@kaplanfox.com*
*aschwartz@kaplanfox.com*
Tel.: 212.687.1980
Fax: 212.687.7714

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King
1999 Harrison Street
Suite 1560
Oakland, CA 94612
*lking@kaplanfox.com*
Tel.: 415.772.4700
Fax: 415.772.4707

Plaintiff Carmine Sodora ("Sodora" or "Plaintiff"), individually and on behalf of all others similarly situated (the "Class Members"), upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against defendant Wawa, Inc. ("Wawa" or "Defendant" or the "Company").

## I.     <u>NATURE OF THE ACTION</u>

1.     Plaintiff brings this class action against Defendant for its failure to exercise reasonable care in securing and safeguarding its customers' personal financial data—in particular, credit and debit card records including cardholder name, card number and associated expiration dates ("Private Information" or "PII").

2.     On December 19, 2019, Wawa's CEO, Chris Gheysens, published an open letter to Wawa's customers titled "Notice of Data Breach." The letter reported that hackers installed malware on Wawa payment processing servers starting on March 4, 2019. The letter also reported that by April 22, 2019, most if not all store systems had been infected, but the malware remained undetected until December 10, 2019, and remained active through and including December 12, 2019. The incident is referred to as the "Security Breach" in this Complaint.

3.     The letter also reported that the hackers were able to obtain sensitive Private Information of payment cards (both credit cards and debit cards) used at "potentially all" Wawa locations' fuel dispenser card readers and in-store terminals during the relevant period.

4.     Accordingly, Plaintiff, on behalf of himself and the Class Members, asserts claims for violations of state consumer statutes, breach of confidence, negligence, breach of implied contract, and unjust enrichment/quasi-contract, and seeks injunctive relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## II.    JURISDICTION AND VENUE

5.    The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) ("CAFA"), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

6.    The Court has personal jurisdiction over Defendant because its principal place of business is located, and it conducts substantial business, in this District.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business in this District and therefore resides in this District pursuant to 28 U.S.C. § 1391(c)(2).

## III.    PARTIES

8.    Plaintiff Sodora is an adult domiciled in New Jersey.  He used his Chase Visa credit card to purchase gasoline at Wawa Store Number 8335 (Garfield, New Jersey) and at Wawa Store Number 8318 (Kearny, New Jersey) during the relevant period and his Personal Information was obtained by hackers.

9.    Plaintiff is at substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

10.    Plaintiff also suffered past injury in the form of damages to and diminution in the value of his Private Information—a form of intangible property that Plaintiff entrusted to Defendant as a form of payment for merchandise and that was compromised in and as a result of the Security Breach.

11.     Plaintiff is also entitled to nominal damages as a result of Defendant's breach of its implied contractual promise to safeguard the Personal Information and entitled to damages arising from Defendant's breach of its common law duty of confidence.

12.     Defendant Wawa, Inc. ("Wawa") is a New Jersey corporation with its principal place of business in Delaware County, Pennsylvania, and is therefore a citizen of both New Jersey and Pennsylvania.  Wawa owns and operates more than 850 convenience stores and gas stations in Pennsylvania, New Jersey, Delaware, Maryland, Virginia, Washington, D.C., and Florida.

## IV.     FACTUAL BACKGROUND

13.     Wawa uses a payment system to electronically process its customers' credit and debit card payments. In the years preceding Wawa's announcement of the Security Breach, several retail outlets made announcements alerting the public of security breaches at their stores, including Eddie Bauer, Sally Beauty, Harbor Freight Tools, Kmart, Saks, Lord & Taylor, Barnes & Noble, Home Depot, Neiman Marcus, Michaels, Target, and TJ Maxx.

14.     Visa has also warned fuel dispenser merchants specifically that "[t]he gas station can be a popular first stop for credit card fraudsters."

15.     In a November 2019 Security Alert, Visa again warned fuel dispenser merchants, including Wawa, that it investigated two breaches in the summer of 2019 involving point-of-sale (POS) malware "to harvest payment card data from fuel dispenser merchant POS systems," as happened here.  Visa emphasized in the Security Alert, "[i]t is important to note that this attack vector differs significantly from skimming at fuel pumps, as the targeting of POS systems requires the threat actors to access the merchant's internal network."

16.     Visa also reminded fuel dispenser merchants of the dangers associated with failing to upgrade to EVM chip technology: "The targeting of fuel dispenser merchants is the result of

slower migration to chip technology on many terminals, with makes these merchants an attractive target for criminal threat actors attempting to compromise POS systems for magnetic stripe payment card data."

17.     Despite these prior warnings, Wawa failed to secure its payment systems.  Indeed, after announcing in 2016 that it would be upgrading its POS system to EVM chip readers, it delayed the roll-out until 2020.  It rolled the dice with its customers' data and lost.

18.     Starting on March 4, 2019, hackers began installing malware on in-store POS systems at various Wawa locations.  By April 22, 2019, the malware was running at most, and "potentially all," Wawa locations.

19.     Wawa has admitted that the hackers obtained not only credit card numbers, but their associated card holder names, and even the associated expiration dates.  Wawa did not detect the malware until December 10, 2019 and admits that it was not contained for another two days.

20.     It is well known that payment card data has significant value and often is targeted by hackers, who easily can sell it because of the "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce." "As long as compromised credit card data continues to be a valuable commodity on the black market, any company collecting or processing valid credit card information will continue to be a high value target[.]'"[1]

21.     Hackers who access payment card data can physically replicate the card or use it online, and theft of payment card information via POS systems is now one of the biggest sources of stolen payment cards.

---

[1] Dan Rayward, Chipotle Reports Suspicious Activity on POS System, INFOSEC. MAG. (April 26, 2017), https://www.infosecurity-magazine.com/news/chipotle-suspicious-activity-pos/.

22.     Despite the well-known vulnerabilities of POS systems, there are security measures and business practices that would have significantly reduced or eliminated hackers' ability to successfully infiltrate Defendant's POS systems.

23.     Data security organizations, federal agencies, and state governments have implemented recommended standards of care regarding security measures designed to prevent these types of intrusions into POS systems. Defendant's adherence to reasonable standards of care could have either prevented or timely detected this Security Breach.

24.     Defendant's treatment of Private Information entrusted to it by its customers fell far short of satisfying its legal duties and obligations. Defendant failed to ensure that access to its data systems was reasonably safeguarded, failed to acknowledge and act upon industry warnings, and failed to use proper security systems to detect and deter the type of attack that occurred and is at issue here.

25.     According to the U.S. Department of Justice Bureau of Justice Statistics, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014. Among identity theft victims, existing bank or credit accounts were the most common types of misused information.[2]

26.     Similarly, the FTC cautions that identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[3]

---

[2] *See Victims of Identity Theft, 2014*, DOJ, at 1 (2015), available at https://www.bjs.gov/content/pub/pdf/vit14.pdf.

[3] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with

27.     Private Information—which includes Plaintiff's and Class Members' names combined with their credit or debit card information that were stolen in the Security Breach—is a valuable commodity to identity thieves.

28.     The value of Plaintiff's and Class members' Private Information on the black market is substantial. Credit card numbers range in cost from $1.50 to $90 per card number.[4] By way of the Security Breach, Defendant has deprived Plaintiff and Class members of the substantial value of their Private Information.

29.     A portion of the services purchased from Wawa by Plaintiff and the other Class Members necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of Private Information, including their credit and debit card information. The cost to Defendant of collecting and safeguarding Private Information is built into the price of all its services. Because Plaintiff and the other Class Members were denied privacy protections that they paid for and were entitled to receive, they incurred actual monetary damages in that they overpaid for their purchases at Wawa stores.

## V.     CLASS ACTION ALLEGATIONS

30.     Plaintiff brings all common law claims and Pennsylvania statutory claims, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class defined as:

---

any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

[4] *The Cyber Black Market:  What's Your Bank Login Worth*, available at https://leapfrogservices.com/the-cyber-black-market-whats-your-bank-login-worth/.

> All persons who used their credit, debit, or prepaid debit card at a Wawa store during the period from March 4, 2019 through December 12, 2019.

31.     Plaintiff also asserts common law and statutory claims under the laws of the state of New Jersey and on behalf of a separate New Jersey Subclass, defined as follows:

> All persons residing in New Jersey or non-residents, who used their credit, debit, or prepaid debit card at a Wawa store in New Jersey during the period from March 4, 2019 to December 12, 2019 (the "New Jersey Subclass")

32.     Excluded from the Class and Subclass are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

33.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class and Subclass are so numerous that joinder of all Class members would be impracticable. On information and belief, Class and Subclass members exceed many thousands.

35.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class and Subclass members and predominate over questions affecting only individual Class and Subclass members. Such common questions of law or fact include, *inter alia*:

a.   Whether Defendant failed to use reasonable care and commercially reasonable methods to secure and safeguard Plaintiff's and Class and Subclass Members' Private Information;

b. Whether Defendant properly implemented its purported security measures to protect Plaintiff's and Class and Subclass Members' Private Information from unauthorized capture, dissemination, and misuse;

c. Whether Defendant took reasonable measures to determine the extent of the Security Breach after it first learned of same;

d. Whether Defendant's conduct constitutes breach of an implied contract;

e. Whether Defendant willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and Class and Subclass Members' Private Information;

f. Whether Defendant was negligent in failing to properly secure and protect Plaintiff's and Class and Subclass Members' Private Information;

g. Whether Plaintiff and the other Class and Subclass Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

36.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and other Class and Subclass Members. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, in both quality and quantity, are less than the numerous common questions that predominate in this action.

37.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class and Subclass Members because, among other things, all Class members were similarly injured through Defendant's uniform misconduct described above

and were thus all subject to the Security Breach alleged herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

38.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class and Subclass representative because his interests do not conflict with the interests of the other Class or Subclass Members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Class and Subclass Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

39.    **Insufficiency of Separate Actions—Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class and Subclass would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The Class and Subclass thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

40.    **Injunctive Relief-Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted and/or refused to act on grounds that apply generally to the Class and Subclass, making injunctive and/or declaratory relief appropriate with respect to the classes under Fed. Civ. P. 23 (b)(2).

41.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The

damages or other financial detriment suffered by Plaintiff and the other Class and Subclass Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class and Subclass Members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I

### Breach of Confidence

42.    Plaintiff repeats and re-alleges the allegations above as though set forth fully herein.

43.    During Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential, valuable, and sensitive nature of Plaintiff's and Class members' Private Information that Plaintiff and Class Members provided to Defendant.

44.    As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by Plaintiff's and Class Members' expectation that their Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

45.    Plaintiff and Class Members provided their respective Private Information to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be disseminated to any unauthorized parties.

46.     Plaintiff and Class Members also provided their respective Private Information to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect that Private Information from unauthorized disclosure, such as following standard information security practices.

47.     Defendant voluntarily received in confidence Plaintiff's and Class Members' Private Information with the understanding that the Private Information would not be disclosed or disseminated to any unauthorized third parties.

48.     Due to Defendant's failure to prevent, detect, and/or avoid the Security Breach from occurring, Plaintiff's and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

49.     But for Defendant's disclosure of Plaintiff's and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Security Breach was the direct and proximate cause of the theft of Plaintiff's and Class Members' Private Information, as well as the resulting damages.

50.     The injury Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class members' Private Information. Defendant knew its computer systems and technologies for collecting and securing Plaintiff's and Class Members' Private Information had numerous security vulnerabilities because Defendant failed to observe industry standard information security practices.

51.     As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members suffered damages as alleged above.

## COUNT II

### Negligence

52.     Plaintiff repeats and re-alleges the allegations contained above as though fully set forth herein.

53.     Defendant owes numerous duties to Plaintiff and the other Class Members. These duties include:

a.  to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b.  to protect Private Information in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

c.  to implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and the other members of the Class of the Security Breach.

54.     Defendant knew or should have known the risks of collecting and storing Private Information and the importance of maintaining secure payment systems. Defendant knew or should have known of the many breaches that targeted other fuel dispenser merchants and retail stores in the years before the Security Breach.

55.     Defendant knew or should have known that its payment systems did not adequately safeguard Plaintiff's and the other Class Members' Private Information.

56.     Defendant breached the duties it owes to Plaintiff and Class Members in several ways, including:

a.  failing to implement adequate security systems, protocols and practices sufficient to protect customer Private Information and thereby creating a foreseeable risk of harm;

b.  failing to comply with the minimum industry data security standards during the period of the Security Breach; and

c.  failing to timely and accurately disclose to customers that their Private Information had been improperly acquired or accessed.

57.     Defendant was negligent in transmitting Plaintiff's and the other Class Members' Private Information over compromised electronic networks it controlled and should have known were compromised or susceptible to compromise.

58.     But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and other Class Members, the Private Information would not have been compromised.

59.     The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Defendant's negligent conduct.

## COUNT III

### Breach of Implied Contract

60.     Plaintiff repeats and re-alleges the allegations contained above as though fully set forth herein.

61.     In using credit or debit cards at Wawa stores, Plaintiff and the other members of the Class entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

62.     Under the implied contract, Defendant was obligated to not only safeguard the Private Information, but also to provide Plaintiff and the other Class Members with prompt, truthful, and adequate notice of any security breach or unauthorized access of said information.

63.     Defendant breached the implied contract with Plaintiff and the other members of the Class by failing to take reasonable measures to safeguard their Private Information.

64.     Defendant also breached its implied contract with Plaintiff and the other Class members by failing to provide prompt, truthful, and adequate notice of the Security Breach and unauthorized access of their Private Information by hackers.

65.     Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to: (i) improper disclosure of their Private Information; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and identity fraud pressed upon them by the Security Breach; (iii) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud; (iv) the increased risk of identity theft; and (v) deprivation of the value of their Private Information, which is likely to be sold to cyber criminals on the dark web.

## COUNT IV

### Unjust Enrichment/Quasi-Contract

66.     Plaintiff repeats and re-alleges the allegations contained above as though fully set forth herein.

67.     Plaintiff and the other Class Members conferred a monetary benefit on Defendant. Specifically, they paid for goods sold by Defendant and provided Defendant with payment information. In exchange, Plaintiff and the other Class Members were entitled to have Defendant protect their Private Information with adequate data security.

68.     Defendant knew that Plaintiff and the other Class Members conferred a benefit on Defendant. Defendant profited from Plaintiff's and the other Class Members' purchases and used their Private Information for business purposes.

69.     Defendant failed to secure Plaintiff's and the other Class Members' Private Information and therefore did not provide full compensation for the benefit the Plaintiff and the other Class Members provided. Defendant inequitably acquired the Private Information because it failed to disclose the inadequate security practices.

70.     If Plaintiff and the other Class Members knew that Defendant would not secure the Private Information using adequate security, they would not have shopped at Wawa's stores.

71.     Plaintiff and the other Class Members have no adequate remedy at law.

72.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and the other Class Members conferred on it.

73.     Defendant should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and the other Class Members proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and the other Class Members overpaid.

## COUNT V

### Violation of New Jersey's Consumer Fraud Act

### N.J. Stat. Ann. § 56:8-1, *et seq.* ("NJCFA")

74.     Plaintiff, individually and on behalf of the other New Jersey Subclass Members, repeats and re-alleges the allegations contained above as though fully set forth herein.

75.     As alleged herein, Defendant, while operating in New Jersey, engaged in unconscionable commercial practices, deception, misrepresentation, and the knowing concealment, suppression, and omission of material facts with intent that others rely on such concealment, suppression, and omission, in connection with the sale and advertisement of services, in violation of N.J. Stat. Ann. § 56.8-2. This includes, but is not limited to the following:

a. failure to maintain the security of credit and/or debit card account information;

b. failure to maintain adequate computer systems and data security practices to safeguard credit and debit card information and other PII;

c. failure to disclose that its computer systems and data security practices were inadequate to safeguard credit and debit card information and other PII from theft; and

d. continued acceptance of PII and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Security Breach; and

76.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiff and New Jersey Subclass Members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

77.    As a direct and proximate result of Defendant's violations above, Plaintiff and the New Jersey Subclass Members suffered damages including, but not limited to:

a. unauthorized use of their PII;

b. theft of their personal and financial information;

c. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d. damages arising from the inability to use their PII;

e. loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and

loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

f.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the Security Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, initiating and monitoring credit freezes, and the stress, nuisance and annoyance of dealing with all issues resulting from the Security Breach;

g.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals; and

h.  damages to and diminution in value of their PII entrusted to Defendant for the sole purpose of purchasing products and services from Defendant; and the loss of Plaintiff's and New Jersey Subclass members' privacy.

78.   As a direct result of Defendant's knowing violation of the NJCFA, Plaintiff and New Jersey Subclass Members are entitled to damages as well as injunctive relief,

79.   Plaintiff brings this action on behalf of themselves and the New Jersey Subclass for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff and the New Jersey Subclass and the public from Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Defendant's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

80.     Plaintiff and the New Jersey Subclass also seek actual damages, injunctive and/or other equitable relief and treble damages, and attorney's fees and costs pursuant to Federal Rule of Civil Procedure 23 and N.J. Stat. Ann. § 56:8-19.

## COUNT VI

**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

**UTPCPL 73 § 201-2 &202-3 *et seq.***

81.     Plaintiff, individually and on behalf of the other Class Members, repeat and re-allege the allegations contained above as though fully set forth herein.

82.     Defendant, Plaintiff, and the Class Members are "Person[s]" within the meaning of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL" 73 PS § 201, et seq.).

83.     The Pennsylvania UTPCPL 73 PS § 201-3 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce …."

84.     Defendant's business acts and practices alleged herein constituted deceptive acts or practices under Pennsylvania UTPCPL 73 PS § 201, *et seq*.

85.     Defendant engaged in deceptive acts or practices by engaging in the course of conduct described herein.

86.     Defendant knew or should have known of vulnerabilities and defects in its data security systems storing PII of Plaintiff and the class before the Security Breach but concealed that information in violation of the UTPCPL.

87.     Defendant engaged in deceptive acts and practices by failing to disclose and actively concealing known data-security defects, and by otherwise deceiving the Plaintiff and the Class.

88.     More specifically, Defendant engaged in deceptive trade practices by:

a.  Misrepresenting or omitting material facts to Plaintiff and the Class regarding the adequacy of its data security procedures protecting PII in violation of 73 Pa. Cons. Stat. §201-3(4) (v), (vii), (ix) and (xxi);

b.  Misrepresenting or omitting material facts to Plaintiff and the Class regarding its failure to comply with relevant state and federal laws designed to protect consumers' privacy and PII in violation of 73 Pa. Cons. Stat. §201-3(4)(v), (vii), (ix), and (xxi);

c.  Failing to discover and disclose the Security Breach to Plaintiff and the Class in a timely and accurate manner in violation of 73 Pa. Cons. Stat §2303(a);

d.  Engaging in unfair, unlawful, and deceptive acts and practices by failing to maintain the privacy and security of Plaintiff's and Class Members' PII, in violation of duties imposed by public policies reflected in applicable federal and state laws, resulting in the Security Breach. These deceptive acts and practices were likely to and did deceive Plaintiff and the Class regarding the lack of security protecting their PII; and

e.  Engaging in unfair, unlawful, and deceptive acts and practices by failing to take proper action following the Security Breach to enact adequate privacy and security measures and protect Plaintiff's and the Class' PII from further unauthorized disclosure, release, data breaches, and theft.

89.   Defendant intentionally and knowingly misrepresented such material facts with an intent to mislead the public, including Plaintiff and the Class.

90.   The above unlawful, unfair, and deceptive acts and practices by Defendant were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff and the Class that they could not reasonably avoid, this substantial injury outweighed any benefits to consumers or to competition.

91.     Defendant owed to Plaintiff and the Class a duty to disclose its data-security defects because Defendant possessed exclusive knowledge regarding the vulnerability of the PII, concealed the data security defects from Plaintiff and the Class, and made incomplete representations regarding its data security systems while withholding material facts from Plaintiff and the Class.

92.     These representations and omissions were material to Plaintiff and the Class due to the value and sensitivity of the PII.

93.     Plaintiff and the Class suffered ascertainable loss as a result of Defendant's misrepresentations, concealment, and omissions of material information as alleged herein.

94.     As a direct and proximate result of Defendant's violation of UTPCPL, Plaintiff and the Class have suffered damages including, but not limited to:

  a. unauthorized use of their PII;

  b. theft of their personal and financial information;

  c. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

  d. damages arising from the inability to use their PII;

  e. loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

  f. costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the Security Breach, including finding

- 21 -

fraudulent charges, purchasing credit monitoring and identity theft protection services, initiating and monitoring credit freezes, and the stress, nuisance and annoyance of dealing with all issues resulting from the Security Breach;

g.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

h.  damages to and diminution in value of their PII entrusted to Defendant for the sole purpose of purchasing products and services from Wawa; and the loss of Plaintiff's and Class Members' privacy.

95.    Plaintiff and the Class seek an order enjoining Defendant's deceptive acts and practices, and awarding attorneys' fees, and any other just and proper relief available under UTPCPL.

96.    In addition to or in lieu of actual damages, Plaintiff and the Class seek statutory damages for each injury and violation which has occurred.

97.    Plaintiff and the Class seek relief under 73 Pa. Cons. Stat.§201-9.2, including, but not limited to, injunctive relief, actual damages, or $100 per Class member, whichever is greater, treble damages, and attorneys' fees and costs.

## VII.   DEMAND FOR JURY TRIAL

98.    Plaintiff demands a trial by jury of all claims so triable.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class and Subclass proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A.      Declaring that this action is a proper class action, certifying the Class and Subclass as requested herein, designating Plaintiff as Class and Subclass Representative, and appointing Class Counsel;

B.      Ordering Defendant to pay actual damages to Plaintiff and the other members of the Class and Subclass;

C.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and his counsel;

D.      Entering an order of equitable relief, in the form of disgorgement and restitution, and injunctive relief as may be appropriate;

E.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

F.      Ordering such other and further relief as may be just and proper.

Dated: January 7, 2020               Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

_____*/s/ Aaron Schwartz*_____
Joel B. Strauss (*pro hac vice* to be sought)
David A. Straite (PA Bar No. 078749)
Aaron Schwartz (PA Bar No. 319615)
850 Third Avenue
New York, NY  10022
*jstrauss@kaplanfox.com*
*dstraite@kaplanfox.com*
*aschwartz@kaplanfox.com*
Tel.: 212.687.1980
Fax:  212.687.7714

-and-

Laurence King (*pro hac vice* to be sought)
1999 Harrison Street
Suite 1560
Oakland, CA 94612
*lking@kaplanfox.com*
Tel.: 415.772.4700
Fax: 415.772.4707

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

20 - 146

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carmine Sodora, individually and on behalf of other similarly situated persons,

## DEFENDANTS

Wawa, Inc.

20 146

**(b)** County of Residence of First Listed Plaintiff   Hudson County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, 14th Floor, New York, NY 10022. (212) 687-1980.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. (CAFA)

Brief description of cause:
Class Action arising from data breach

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions.)*

JUDGE   Hon. Gene E. K. Pratter

DOCKET NUMBER   19-cv-6019-GEKP

DATE
01/07/2020

SIGNATURE OF ATTORNEY OF RECORD

JAN -8 2020

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG JUDGE   _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**20 146**

DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 920 Jefferson Street, Apartment 304, Hoboken, NJ 07030

Address of Defendant: _____ 260 West Baltimore Pike, Wawa, Pennsylvania, 19063

Place of Accident, Incident or Transaction: _____ In and around Northern New Jersey

---

**RELATED CASE, IF ANY:**

Case Number: 19-cv-6019-GEKP  Judge: Hon. Gene E. K. Pratter  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☑  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/07/2020 _____ (Must sign here) _____ 319615

Attorney-at-Law / Pro Se Plaintiff _____ Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☑ 6. Other Personal Injury *(Please specify):* 370 Other Fraud
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Aaron L. Schwartz , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

JAN -8 2020
319615

DATE: 01/07/2020 _____ Sign here if applicable

Attorney-at-Law / Pro Se Plaintiff _____ Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

GEKP

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Carmine Sodora, individually and on behalf of other similarly situated persons, | : | CIVIL ACTION |
| v. | : | **20   146** |
| Wawa, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| January 7, 2020 | Aaron L. Schwartz | Plaintiff and Proposed Class |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (212) 687-1980 | (212) 687-7714 | aschwartz@kaplanfox.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JAN -8 2020